IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

CYNTHIA D. YOUTSEY,

                Plaintiff,                                      CV-11-6014-CL

v.                                               FINDINGS AND
                                             RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

CLARKE, Magistrate Judge:

Cynthia Youtsey ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI") disability benefits under the Act. For the reasons set forth below, the Commissioner's decision should be REVERSED and this case should be REMANDED for further proceedings.

Page 1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

On July 17, 2007, plaintiff protectively filed an application for SSI. Tr. 11, 159-65. After

the application was denied initially and upon reconsideration, plaintiff timely requested a hearing

before an administrative law judge ("ALJ"). Tr. 89-92, 96-101. On February 1, 2010, an ALJ

hearing was held before the Honorable Louis J. Volz. Tr. 36-68. On February 19, 2010, ALJ Volz

issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 11-30. After the

Appeals Council declined to review the ALJ decision on November 18, 2010, plaintiff filed a

complaint in this Court. Tr. 1-4.

## FACTUAL BACKGROUND

Born on March 11, 1959, plaintiff was 48 years old on the alleged onset date of disability and

50 years old at the time of the hearing. Tr. 28, 242. Plaintiff attended special education classes and

obtained a General Education Development ("GED") certificate. Tr. 198. Plaintiff has no previous

work experience. Tr. 28. She alleges disability beginning July 17, 2007 due to hearing loss, arthritis,

bursitis, diabetes, degenerative joint disease, fibromyalgia, depression, anxiety, learning disability,

and attention deficit disorder ("ADD"). Tr. 192.

Terry Walters, plaintiff's social worker, testified at the hearing. Tr. 60-5. Mr. Walters stated

that plaintiff is suffering from "lots of anxiety, fear that comes with PTSD, hyper vigilance, poor

memory, . . . [and] poor concentration." Tr. 62. A vocational expert ("VE") also testified at the

hearing. Tr. 66-7. The VE opined that there were light exertion jobs available in the local economy

which plaintiff could perform based on the limitations set forth in the residual functional capacity

("RFC") assessment. Id. However, when asked to assume that, in addition to the limitations set

forth in the RFC, plaintiff would have frequent breaks in concentration due to anxiety or pain, the

Page 2 - FINDINGS AND RECOMMENDATION

VE testified that plaintiff would not be able to perform any of the jobs identified. Tr. 67. In addition, when asked if missing two days of work would preclude sustained employment, the VE responded yes. *Id.*

## STANDARD OF REVIEW

The court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Secretary determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

Page 3 - FINDINGS AND RECOMMENDATION

At step two, the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Secretary determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Secretary. *Yuckert*, 482 U.S. at 141. At step five, the Secretary must establish that the claimant can perform other work. *Id.* at 142; *see* 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

### I. The ALJ's Findings

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 13, Finding 1. This finding is not in dispute. At step two, the ALJ found that plaintiff had the following severe impairments: obesity, seizures, hearing loss, arthritis left hip, diabetes mellitus, obstruction sleep apnea, and ADD. Tr. 14, Finding 2. This finding is in dispute. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of

Page 4 - FINDINGS AND RECOMMENDATION

a listed impairment. Tr. 14-25, Finding 3. This finding is not in dispute.

Because plaintiff did not establish disability at step three, the ALJ continued the evaluation process to determine how plaintiff's medical impairments affected her ability to work. The ALJ resolved that plaintiff had the RFC to perform the full range of light exertional work. Tr. 25, Finding 4. Plaintiff, however, was to avoid ladders and ropes, as well as concentrated exposure to loud noises and hazardous machinery. *Id.* Further, because plaintiff "has to have new information slowly and broken down into smaller parts," she was restricted to work that involved simple, repetitive tasks. *Id.* Plaintiff disputes her RFC assessment.

At step four, the ALJ concluded that transferability of job skills was not at issue because plaintiff did not have any past relevant work. Tr. 28, Finding 8. This finding is not in dispute. Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national and local economy that plaintiff could perform. Tr. 28, Finding 9. This finding is in dispute. Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Act. Tr. 29.

## II. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ erred by: 1) not finding severe mental impairments at step two; 2) improperly discrediting her testimony; 2) erroneously rejecting third-party statements; 3) failing to properly assess the opinions of Drs. Thompson and Redner; 4) not including all of her limitations in the RFC; and 5) accepting jobs identified by the VE that are inconsistent with the RFC. *See* Pl.'s Opening Br. 13.

### A. Step Two Findings

Plaintiff asserts that the ALJ failed to include her depression and anxiety, as well as her

Page 5 - FINDINGS AND RECOMMENDATION

borderline intellectual functioning, as severe impairments at step two of the five-step sequential

process. *Id.* Plaintiff contends that these mental impairments adversely effect her energy level,

concentration, memory, and ability to process new information. *Id.* at 4-6.

At step two, the ALJ determines whether the claimant has a medically severe impairment or

combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. §§

404.1520(a); 416.920(a). An impairment is "not severe" if it "does not significantly limit [the

claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1521(a); 416.921(a). The step two

inquiry is a "threshold inquiry." *Yuckert*, 482 U.S. at 153. As such, "[o]missions at step two are

harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step

two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing *Lewis v. Astrue*, 498

F.3d 909, 911 (9th Cir. 2007)).

The "effect of this harmless error doctrine is tempered by additional requirements," however,

when a claimant asserts disability due to mental impairments. *Id.* In that case, the ALJ is required

to "'document application of the [Psychiatric Review Technique] in the decision.'" *Keyser v.*

*Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (quoting 20 C.F.R. § 404.1520a(e));

*see also Dykstra v. Barnhart*, 94 Fed.Appx. 449, 450 (9th Cir. 2004). This technique is reflected in

a Psychiatric Review Technique Form ("PRTF"), wherein the reviewer must: 1) "determine whether

an applicant has a medically determinable mental impairment"; 2) "rate the degree of functional

limitation for four functional areas"; and 3) "determine the severity of the mental impairment (in part

based on the degree of functional limitation)." *Keyser*, 648 F.3d at 725 (citing 20 C.F.R. §

404.1520a). Accordingly, the ALJ's written opinion must "incorporate the pertinent findings and

conclusions based on the technique" and "include a specific finding as to the degree of limitation in

Page 6 - FINDINGS AND RECOMMENDATION

each of the functional areas." *Keyser*, 648 F.3d at 725 (citations and internal quotations omitted).

Failure to document the application of the technique in the opinion "requires reversal if the plaintiff had a 'colorable claim of a mental impairment.'" *Dykstra*, 94 Fed.Appx. at 450 (citing *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir.2000) (construing an earlier version of section 1520a)); *see also Keyser*, 648 F.3d at 726. A colorable claim "is one which is not 'wholly insubstantial, immaterial, or frivolous.'" *Dykstra*, 94 Fed.Appx. at 450 (quoting *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 981 (9th Cir. 2002)); *see also Keyser*, 648 F.3d at 726-7.

Here, the ALJ did not follow the proper procedure; specifically, the ALJ failed to include pertinent findings and conclusions based on the technique and a specific finding as to the degree of limitation in each of the functional areas. Rather, the ALJ stated that plaintiff's depression and anxiety were non-severe because "[n]o treatment has been received by any competent and recognized medical doctor." Tr. 19. The ALJ then summarized limited portions of the record, but without any analysis, before concluding that plaintiff was not remotely impaired in any functional area. Tr. 14-28. This is inadequate for the purposes of section 404.1520a. *See Keyser*, 648 F.3d at 726 ("the written decision did not document the ALJ's application of the technique and did not include a specific finding as to the degree of limitation in any of the four functional areas . . . this is insufficient to meet the requirements of 20 C.F.R. § 404.1520a(e)").

Further, pursuant to this analysis, the ALJ mis-characterized the record. For instance, the ALJ stated that "[d]epression/anxiety is not a severe condition" because plaintiff "has good functioning in all areas, interested and involved in a wide-range of activities, socially effective, generally satisfied with life, no more than everyday problems and concerns." Tr. 18. The record, however, reveals the contrary. Plaintiff has consistently reported that she has a "hard time . . .

Page 7 - FINDINGS AND RECOMMENDATION

getting motivated" to manage her household and her personal care, and often needs "encouragement." Tr. 218-9, 202-3. She reported very limited daily activities due to pain, depression, and fatigue. Tr. 51-4. In addition, plaintiff stated that she rarely leaves the house or socializes, and is no longer able to perform her hobbies, such as attending church, camping, and bowling. Tr. 49-50, 205-6, 221-2. Plaintiff also stated that she has poor comprehension and memory and is easily confused. Tr. 48, 55, 205-6, 221-2.

Mr. Walter's statements, as well numerous medical reports, are congruous with plaintiff's testimony. Tr. 60-5, 433, 441-4, 530-7, 600-3, 664. Moreover, there is no evidence in the record which suggests that plaintiff is "generally satisfied with life, [with] no more than everyday problems and concerns." Therefore, even if the ALJ properly discredited plaintiff's testimony, the third-party statements, and the medical evidence, his summation of plaintiff's mental state was nonetheless an inaccurate and misleading representation of the record.

In addition, the ALJ relied on Dr. Nebeker's records from May 2005, which noted that plaintiff was "stabilized on medication" and "doing well," to conclude that plaintiff's mental impairments were successfully managed with treatment and therefore were non-severe. Tr. 19. However, those treatment notes were made over two years before plaintiff's alleged onset date and, as such, are not illustrative of the mental impairments she currently alleges as the basis of her disability. Tr. 11.

More recent evidence indicates that plaintiff's depression and anxiety reemerged in 2006 and continued throughout the time of her hearing in 2010; one such example is Dr. Redner's neuropsychological evaluation from September 2007. Tr. 530-7. Based on a series of objective tests and numerous other factors, Dr. Redner diagnosed plaintiff with Major Depressive Disorder,

Page 8 - FINDINGS AND RECOMMENDATION

recurrent, severe; Generalized Anxiety Disorder; Pain Disorder, with psychological and physical factors; Mathematics Disorder; and Borderline Intellectual Abilities, with a Global Assessment Functioning ("GAF") score of 55. Tr. 535. Additional evidence from the record supports Dr. Redner's assessment, including records from plaintiff's treating physician, Dr. Thompson, who diagnosed plaintiff with anxiety and depression in late 2006. Tr. 397, 429-34, 444, 525-6, 543, 596-606, 664, 723-761, 763-6.

Thus, the ALJ's failure to follow 20 C.F.R. § 404.1520a(e) was not harmless because plaintiff demonstrated a colorable claim of mental impairment. *See Keyser*, 648 F.3d at 726-7 (colorable claim of mental impairment existed where claimant had a GAF score of 55 to 65, which indicated moderate symptoms, and where third-party statements indicated that the claimant's mental impairments adversely impacted her ability to maintain employment). The ALJ's failure to properly analyze plaintiff's mental impairments at step two may have also resulted in errors at subsequent steps of the disability analysis. *See* 20 C.F.R. § 404.1520 (listing five-step evaluation process). The ALJ also utilized plaintiff's subjective reports regarding these impairments, in part, as a means of discrediting her testimony. Tr. 26. As such, the Court is unable to determine whether substantial evidence supports the ALJ's credibility determination.

Accordingly, this Court need not address plaintiff's other allegations of error, as they primarily address how the ALJ's failure to consider plaintiff's mental impairments at step two adversely effected the RFC determination and step five of the sequential process. Therefore, on remand, the ALJ must evaluate plaintiff's mental impairment using the procedures set out at 20 C.F.R. § 1520a and must perform the subsequent steps of the analytical process, particularly readdressing plaintiff's credibility, in light of the new evaluation.

Page 9 - FINDINGS AND RECOMMENDATION

## CONCLUSION

For the foregoing reasons, the Commissioner's decision should be REVERSED and this case should be REMANDED for proper evaluation and documentation of plaintiff's mental impairments and their effect on plaintiff's claim of disability. A judgment should be prepared accordingly.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days from service of the Findings and Recommendation. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

DATED this _17_ day of February, 2012.

Mark D. Clarke
United States Magistrate Judge

Page 10 - FINDINGS AND RECOMMENDATION